IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ERIKA N. VALENTINE,               :      No. 4:13-cv-00523
                                  :
          Plaintiff               :      (Judge Brann)
                                  :
     v.                           :
                                  :
LOCK HAVEN UNIVERSITY OF          :
PENNSYLVANIA OF THE STATE         :
SYSTEM OF HIGHER                  :
EDUCATION, et al.,                :
                                  :
          Defendants.             :

**MEMORANDUM**

**July 14, 2014**

For the following reasons, the motion to dismiss (Fed. R. Civ. P. 12(b)(6)) of

Defendants Lock Haven University, Deborah Erickson, Donna Wilson, and Walter

Eisenhauer is granted as to plaintiff's claims arising under federal law. The Court

will relinquish jurisdiction over plaintiff's claims arising under state law.

## I.    General Background

On February 25, 2013, Defendants removed this case to federal court, citing

28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1343 (civil rights

jurisdiction). By that time, plaintiff Erika N. Valentine was already onto her Third

Amended Complaint, which set forth eight counts. Two counts are asserted against

1

Lock Haven University (hereinafter, the "University") alone – count I, petition for writ of mandamus, and count II, declaratory judgment. Count III alleges that Defendants Erickson and Eisenhauer, in their personal capacities, violated Valentine's substantive due process rights, and count IV alleges that the same Defendants, again in their personal capacities, violated Valentine's procedural due process rights. Count V alleges that Defendant Wilson, in her personal capacity, violated Valentine's substantive due process rights. Counts VI and VII allege that Erickson, Eisenhauer, and Wilson, in their official capacities, as well as the University, violated Valentine's substantive (count VI) and procedural (count VII) due process rights, respectively. Valentine asserts the Defendants are liable for the foregoing due process violations under 42 U.S.C. § 1983.[1] Count VIII alleges that Eisenhauer intentionally inflicted emotional distress upon Valentine.

On March 19, 2013, Defendants filed a motion to dismiss all claims. (ECF No. 4). Valentine filed a brief in opposition on April 18, 2013. (ECF No. 10).

_____

[1] 42 U.S.C. § 1983 says:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

## II.     Fed. R. Civ. P. 12(b)(6) Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 662. The goal behind the standard is to weed out those claims that do not present "enough" factual matter, assumed to be true, "to raise a reasonable expectation that discovery will reveal evidence" in support of the claims. Twombly, 550 U.S. at 556. Where a "plaintiff[] [fails to] nudge[] [her] claims across the line from conceivable to plausible, [her] complaint must be dismissed." Id. at 570.

As a matter of procedure, the United States Court of Appeals for the Third Circuit has instructed that,

> after Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. [Iqbal, 556 U.S. at 678-79]. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." [Id. at 679].

Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009).

The Third Circuit permits the statute of limitations – although technically an affirmative defense – to be raised on motion under Fed. R. Civ. P. 12(b)(6) as long as the basis for the defense is apparent from the face of the complaint. See Robinson v. Johnson, 313 F.3d 128, 135 (3d Cir. 2002).

## III.   The Third Amended Complaint

Valentine makes the following allegations in support of her claims.

The University is part of Pennsylvania's State System of Higher Education. (Third Am. Compl., Feb. 25, 2013, ECF No. 1-1 ¶ 2). Erickson was once the University's Provost and Vice President of Academic Affairs; Wilson currently holds those titles. (Third Am. Compl. ¶¶ 5, 7). Eisenhauer is an associate professor at the University and Director of the University's Physician's Assistant Program (hereinafter, the "Program"). (Id. ¶ 9). Valentine was admitted to the Program in early 2006. (Id. ¶ 10).

Valentine's troubles began over a year later in summer 2007. It was then that students and faculty of the Program attended a medical conference – where the conference was held is not revealed. (Id. ¶ 11). In any event, the conference concluded, and that evening Valentine dined out together with fellow students at a restaurant/bar. (Id. ¶ 12). While Valentine and the others were dining, Eisenhauaer

entered the restaurant, sat down at Valentine's table, and encouraged his newfound

company to join him for drinks. (Id. ¶ 14). Valentine and others decided to leave

early, but before they could complete their escape, Eisenhauer took up and kissed

the hand of the "clearly offended" Valentine as the students were exiting. (Id. ¶ 15-

16). Eisenhauer's indiscretion generated an "anonymous report of the kiss and the

offensive behavior exhibited by Eisenhauer toward Valentine" at the restaurant.

(Id. ¶ 17). Eisenhauer mistakenly believed that Valentine had authored the report,

and began a scorched earth campaign to drum Valentine out of the Program. (Id. ¶

18).

Eisenhauer's first shot came out of the blue in August 2007: he asserted that

Valentine lacked the prerequisite coursework necessary for admission to the

Program. (Id. ¶¶ 21-22). Alone among her peers, Valentine was threatened with

dismissal if she did not resubmit her undergraduate transcripts to prove she had

completed the Program prerequisites. (Id. ¶¶ 23

Surviving that skirmish, Valentine continued in the Program without

incident until February 11, 2008, when Professor Anna Mae Smith, at Eisenhauer's

behest, abruptly informed Valentine that she (Valentine) was dismissed from the

Program for failure to turn in an assignment from winter 2007, an assignment

Valentine had not previously been informed was missing. (Id. ¶¶ 26, 28-30). At the

time of Smith's tidings, Valentine was in the midst of an off-site clinical rotation; Smith told Valentine not to continue. (Id. ¶¶ 25, 31). The next day, February 12, 2008, Eisenhauer confirmed Valentine's dismissal by e-mail and reiterated that she was not permitted to return to her clinical rotation. (Id. ¶ 32). A formal dismissal letter followed on February 15, 2008. (Id. ¶ 34). Valentine's dismissal was not preceded by a hearing and did not comply "with the written policies and procedures of [the University] regarding academic misconduct and dismissal from the University." (Id. ¶¶ 35-36).

Proceeding "under the [University] appeals process policies and procedures," Valentine appealed her dismissal to Eisenhauer on February 15, 2008. (Id. ¶ 37). Eisenhauer denied Valentine's appeal on February 29, 2008. (Id. ¶ 38). Valentine appealed Eisenhauer's denial to the University's Graduate Council, which held a hearing – attended by Valentine and her legal counsel – on March 21, 2008. (Id. ¶¶ 39-41). At the hearing, Eisenhauer confronted Valentine with accusations that, it was revealed, he had never notified her of prior to the hearing. (Id. ¶¶ 42-45). On April 7, 2008, the University's Graduate Council readmitted Valentine to the Program "without prejudice or qualification." (Id. ¶ 46). Valentine had not been permitted to continue her coursework while her appeals were pending. (Id. ¶ 33).

Eisenhauer did not cease fire, conditioning Valentine's readmission on his designation of her advisor, Professor Steve Harris, and on Valentine taking a practical examination that Eisenhauer would proctor and grade. (Id. ¶¶ 49-51). Eisenhauer represented that the examination was intended to refresh Valentine's skills and would not count against her, but after Valentine took the examination, Eisenhauer told her that she had failed and would have to take it again.  (Id. ¶¶ 53-55). Valentine took the exam again; Eisenhauer told her that she had failed again. (Id. ¶ 56). He added that, were Valentine to fail a third time, she would be dismissed from the Program. (Id. ¶ 57). After Valentine's counsel intervened, it was agreed that Valentine would take a third exam with Professor Harris present during evaluation. (Id. ¶ 59). With Harris present, Valentine passed. (Id. ¶ 60).

Readmitted to the Program, Valentine requested that her next clinical rotation return her to the doctor's office from which she had been removed in February 2008. (Id. ¶ 61). Students in the Program are generally permitted to select the doctor who will supervise them on their rotations, but Eisenhauer denied Valentine's request and assigned her a supervisor with whom he had "connections and close associations, including an employment relationship," according to Valentine. (Id. ¶¶ 62-63). After her lawyer intervened, however, Valentine's initial request was granted. (Id. ¶¶ 64-65).

7

Eisenhauer then unilaterally – and without explanation – changed Valentine's advisor from Professor Harris to two professors whose "decisions he [(Eisenhauer)] could control," according to Valentine. (Id. ¶¶ 66-68). Valentine was the only student whose advisor was unilaterally changed by Eisenhauer at that time, and she became the only student in the Program with two advisors. (Id. ¶¶ 69-70).

Then the coup de grace. In December 2008, during Valentine's last rotation necessary to complete the Program, Eisenhauer summoned her to return to the University to take her summative examinations. (Id. ¶ 71). By contrast, none of her peers was likewise required to take summative exams prior to completion of clinical rotations and before the end of the semester. (Id. ¶ 72).

Eisenhauer proctored one of the exams – an "open-book, open-notes, open-computer examination" – and he left the room once the exam commenced, so Valentine could not ask him questions (which would have been permissible as well, apparently). (Id. ¶¶ 74-77). Before Valentine had finished her exam, and without warning her that the time allotted for the test had expired, Eisenhauer reentered the examination room and demanded that Valentine turn in her answers for grading. (Id. ¶78). Because it was unfinished, Valentine's exam included excerpts from published articles without citation; Valentine did not have the

opportunity to add citations or remove the excerpts as appropriate. (Id. ¶ 79).

The exam was reviewed by Eisenhauer and his alleged adjutant, Professor Curtis Grenoble, one of the two advisors Eisenhauer had assigned to Valentine. (Id. ¶ 80). Eisenhauer and Grenoble determined that Valentine had plagiarized and informed her that she would receive a failing grade for her rotation, and that she would be dismissed from the Program. (Id. ¶¶ 80-81). Indeed, Valentine was dismissed, and – in violation of applicable "policies and procedures" set forth by the University and the Pennsylvania State System of Higher Education Board of Governors – she was not allowed to continue in the Program while her appeals were heard. (Id. ¶¶ 82-84). Specifically, "[b]efore Valentine's case was adjudicated, Eisenhauer and the [Physician's Assistant] Program did not allow Valentine to complete her remaining summative examinations, cut off her access to all program materials, deactivated her school email address, and reported her as not enrolled/withdrawn to the National Student Loan Data System." (Id. ¶ 85).

In accordance with University policy, Valentine appealed to a University hearing officer. (Id. ¶ 87). On February 20, 2009, the appointed officer, Professor Douglas S. Campbell, held a hearing on the plagiarism charges. (Id. ¶¶ 88-89). Four days later, on February 24, 2009, Campbell concluded that Valentine should be dismissed from the Program. (Id. ¶ 90). Valentine appealed to the Vice

President of Academic affairs, who assigned her appeal to the University Academic Appeals Board, which held a hearing on December 11, 2009. (Id. ¶¶ 91-93). On January 19, 2010, the Academic Appeals Board recommended a new hearing for Valentine based on the existence of evidence not presented at the hearing before Campbell: "The Academic Appeals Board believes that this evidence should be reviewed to ascertain its appropriateness to Ms. Valentine's appeal." (Id. ¶ 94 & Ex. A).

Defendant Erickson appointed Dr. Howard R. Congdon as the new hearing officer. On May 27, 2010, Congdon decided that Valentine should be readmitted to the Program without prejudice, and that an "incomplete" should be substituted for her failing grade on her summative examination, giving Valentine another shot at completing the requirements of the Program. (Id. ¶ 96). The University, however, did not act on Congdon's determination. (Id. ¶ 97). Valentine's counsel made numerous inquiries, and finally, by letter dated August 16, 2010, Erickson explained the reason for the University's inaction:

> I have had the opportunity to review Dr. Congdon's determination and I find that there was no "new evidence" provided by Ms. Valentine to Dr. Congdon. . . . Dr. Congdon, rather than review "new evidence" substituted his interpretation of various legal principles and his own concept of justice and fairness. This was not the purpose for granting an additional hearing. The purpose of the new hearing was to determine if the "new evidence" presented by Ms. Valentine in any way would impact the analysis and determinations of Dr. Campbell. Seeing no such

10

new evidence in the record before me, I find Dr. Congdon's determination to be just a rehash of the same evidence that was presented to Dr. Campbell. Accordingly, Dr. Congdon's determination is vacated.

Dr. Campbell's determination . . . is cogent, states the necessary standard of reivew, and disposes of all of Ms. Valentine's alleged claims of error. I find his analysis sound and adopt his reasoning in total.

Therefore, at this time, I am reinstating the decision of Dr. Douglas Campbell . . . .

(Id. ¶¶ 98-100 & Ex. C).

## IV.    Discussion

The Court will address only Valentine's claims arising under federal law, which the Court concludes should be dismissed; the Court will relinquish jurisdiction over plaintiff's claims arising under state law.

### (a)    Substantive Due Process

Valentine alleges that Eisenhauer, Erickson, and Wilson, in their personal and official capacities, as well as the University, deprived Valentine of her substantive due process rights. (see Third Am. Compl. Counts III, V-VI). Defendants argue that Valentine's substantive due process claims must be dismissed because, inter alia, she has failed to assert an interest to which substantive due process protection applies. (See Def. Supp. Br., Apr. 4, 2013, ECF No. 9 at 21-22). The Court agrees with the Defendants.

"To prevail on a non-legislative substantive due process claim" – which is

11

what Valentine's claim is – "'a plaintiff must establish as a threshold matter that [she] has a protected property interest to which the Fourteenth Amendment's [substantive] due process protection applies." Nicholas v. Pennsylvania State Univ., 227 F.3d 133, 139-40 (3d Cir. 2000) (Alito, J.) (quoting Woodwind Estates Ltd. v. Gretkowski, 205 F.3d 118,  123 (3d Cir. 2000)). Not all property interests are so protected, and whether a particular species of property receives substantive due process protection "is not determined by reference to state law, but rather depends on whether that interest is 'fundamental' under the United States Constitution." Nicholas, 227 F.3d at 140.

"[S]o far," at least in this Circuit, the courts "have limited non-legislative substantive due process rights to real property ownership," and have "declined to recognize a fundamental property interest in a variety of other circumstances." Connection Training Serv. v. City of Philadelphia, 358 F. App'x 315, 320 (3d Cir. 2009). One of these "other circumstances" includes a case that presented "the issue of due process requirements in the dismissal of a student from a state university's graduate program." Mauriello v. Univ. of Med. & Dentistry of New Jersey, 781 F.2d 46, 47 (3d Cir. 1986). Although the Mauriello Court was not required to reach the issue, Judge Weis nevertheless "strongly suggested in dictum that a student's right to continued enrollment in a graduate program does not" warrant substantive

12

due process protection. <u>Homar v. Gilbert</u>, 89 F.3d 1009, 1021 (3d Cir. 1996), <u>rev'd on other grounds</u>, 520 U.S. 924 (1997).

In the face of the Circuit court's "strong suggestion" that her interest[2] is not so "fundamental" to be deserving of substantive due process protection, Valentine tepidly restates her position that she has a property interest in tuition payments and educational opportunity, and asserts that the court in <u>Rivera v. Lebanon Sch. Dist.</u>, 825 F. Supp. 2d 561 (M.D. Pa. 2011) (Kane, J.), "recognized that money is a protected interest." (Pl. Opp'n Br., Apr. 18, 2013, ECF No. 10 at 12).

This argument goes nowhere because <u>Rivera</u> involved a <u>procedural</u> due process claim, not a substantive due process claim, and "'not all property interests worthy of procedural due process protection are protected by the concept of substantive due process.'" <u>Nicholas</u>, 227 F.3d at 140 (quoting <u>Reich v. Beharry</u>, 883 F.2d 239, 243 (3d Cir. 1989)). Indeed, courts should be "reluctant to extend substantive due process protection to other, less fundamental property interests" than interests in real property. <u>Nicholas</u>, 227 F.3d at 141.

In light of the foregoing, the Court will grant Defendants's motion to

---

[2]Valentine asserts that she "has a property interest in the money she expended for tuition" and "in the educational opportunity she paid for." (<u>See</u> Third Am. Compl. ¶¶ 154-55, 176-77, 187-88). Breaking her interest down this way does not distinguish it from the "right to continued enrollment in a graduate program" considered in <u>Mauriello</u>.

dismiss Valentine's Counts III, V, and VI, each based on an alleged violation of Valentine's substantive due process rights.

**(b)    Procedural Due Process**

Valentine also alleges that Eisenhauer and Erickson, in their personal capacities, Wilson, in her official capacity, and the University, deprived Valentine of her procedural due process rights. (see Third Am. Compl. Counts IV, VII). In support of her claim, Valentine includes a laundry list of factual assertions that she puts under the heading of "[p]ursuing means to remove Valentine, without cause, from" the Program. (Id. ¶ 168(f)). The list includes Eisenhauer's impugning of Valentine's prerequisites in 2007; Eisenhauer's early-2008 dismissal of Valentine on the basis of a missing assignment (including Eisenhauer's failure to disclose the totality of his charges against Valentine before her appeal); Eisenhauer's imposition of a practical examination upon Valentine as a condition of her return to the Program (including Eisenhauer's decision to twice give Valentine a failing grade); Eisenhauer's removal of Professor Harris as Valentine's advisor; Eisenhauer's attempt to control Valentine's clinical rotation supervisor; Eisenhauer's early recall of Valentine from her clinical rotation to take summative examinations; and Eisenhauer's trumped-up charges of plagiarism in late 2008. (Id.). In addition, Valentine alleges that her procedural due process rights were

14

violated when Eisenhauer dismissed Valentine for plagiarism outside of "required disciplinary procedures," and when Erickson failed to follow the appellate procedures prescribed by law and Program policy, specifically by vacating the decision of Dr. Congdon to reinstate Valentine. (Id. ¶¶ 168(a)-(e)).

The Defendants argue that some or all of Valentine's procedural due process claims should be dismissed because she was given all the process she was due, her claims against the University and the individual defendants in their official capacities are defective, and all of her claims are barred by the statute of limitations. The Court addresses these arguments in turn.

Ignoring all but the allegations stemming from Valentine's ultimate dismissal from the Program for plagiarism, the Defendants argue that Valentine was given all the process she was due because "the University's professors dismissed [her]" and an appellate "hearing was held before Dr. Campbell." (Def. Supp. Br. at 25-26). Moreover, Valentine was granted "a new hearing before Dr. Congdon," who also found that she plagiarized (though he believed milder discipline was in order). (Id.). Accordingly, Defendants assert, Valentine's procedural due process allegations are "clearly without merit." (Id.)

The Defendants's argument relies on the assumption that Valentine's dismissal for plagiarism was "academic" in nature; Valentine disputes this

assumption, arguing that her dismissal was "disciplinary," and with good reason because the distinction has implications for the process due before a student can be expelled.  Disciplinary dismissals must be preceded by, at least, notice to the student of the charges against her, an explanation of evidence underlying the charges, and an opportunity for the student to present her side of the story. See Palmer v. Merluzzi, 868 F.2d 90, 93 (3d Cir. 1989). In contrast, because "the determination whether to dismiss a student for academic reasons requires an expert evaluation of cumulative information and is not readily adapted to the procedural tools of judicial or administrative decisionmaking," the United States Supreme Court in Bd. of Curators of Univ. Of Missouri v Horowitz held that "far less stringent procedural requirements [are called for] in the case of an academic dismissal." 435 U.S. 78, 86, 90 (1978). The Third Circuit has said that "an informal faculty evaluation is all that is required." Hankins v. Temple Univ. (Health Sci. Ctr.), 829 F.2d 437, 445 (3d Cir. 1987).

The weight of authority – which this Court sees no compelling reason to depart from – supports Valentine's contention that her dismissal is better characterized as disciplinary than academic. See Pugel v. Bd. of Tr. Of Univ. of Illinois, 378 F.3d 659, 663 (7th Cir. 2004) ("Courts addressing graduate student dismissals on charges of academic dishonesty traditionally have relied upon Goss,"

16

the seminal case on student <u>disciplinary</u> suspensions/dismissals). And because the

Defendants place all their eggs in the "academic dismissal" basket, their arguments

to the effect that Valentine was provided the minimal process she was due crack up

once it turns out that she was due significantly more.

In any event, taking Valentine's allegations at face value, she adequately

alleges a violation of her right to procedural due process. Assuming that her

dismissal implicated a property right, which Defendants do not dispute (Def. Supp.

Br. at 24-27), <u>see also Borell v. Bloomsburg Univ.</u>, 955 F. Supp. 2d 390, 402

(M.D. Pa. 2013) (Caputo, J.) ("Courts in the Third Circuit have repeatedly

recognized that a graduate student has a property interest protected by procedural

due process in the continuation of his or her course of study under Pennsylvania

law."), she asserts that she was accused of plagiarism and dismissed from the

Program by Eisenhauer and Grenoble, apparently without a hearing of any sort.

(<u>See</u> Third Am. Compl. ¶¶ 80-87). Since the University's appeals process is no

substitute for adequate pre-dismissal procedures, <u>see Assenov v. Univ. of Utah</u>,

553 F. Supp. 2d 1319, 1328 (D. Utah 2008) ("Implicit in [the Supreme Court's

school discipline] cases is that post-dismissal procedure alone is not

constitutionally sufficient."); <u>Alvin v. Suzuki</u>, 227 F.3d 107, 120 (3d Cir. 2000)

("[I]f the Constitution requires pre-termination procedures, the most thorough and

fair post-termination hearing cannot undo the failure to provide such procedures."),

Valentine's allegations are sufficient to state a claim.

The Defendants further argue, however, that Valentine's procedural due

process claim against the University  must be dismissed because the University is

"part of the state. . . protected by Eleventh Amendment immunity," and because

"only 'persons' are subject to suit under § 1983, not states." (Def. Supp. Br. at 23-

24). Likewise, Defendants argue that Erickson, Eisenhauer, and Wilson cannot be

sued in their official capacities because "state officials acting within their official

capacities are not 'persons' capable of being sued" under § 1983. (Id.). Valentine

rejoins that she seeks injunctive relief (reinstatement in the Program), which can be

pursued "against a state official in [sic] their official capacity." (Pl. Opp'n Br. at

10).

Valentine is right, see Will v. Michigan Dept. of State Police, 491 U.S. 58,

71 n.10 (1989) (Ex Parte Young exception allows § 1983 "official capacity" suit

against state official where plaintiff seeks injunctive relief). Accordingly,

Valentine's Count VII should be dismissed as to the University because the

University is immune from suit, see Bowers v. Nat'l Collegiate Athletic Ass'n, 475

F.3d 524, 546 (3d Cir. 2007) ("[W]e have held in the past that the Pennsylvania

System of Higher Education was entitled to Eleventh Amendment immunity."),

and not a "person" for purposes of § 1983, see Will, 491 U.S. at 71, but not as to the other Defendants. Since the Defendants do not contend that Valentine's claim fails to satisfy the requirements of the Ex Parte Young exception, the Court does not consider the issue.

Were that all, Valentine's claims against the individual Defendants – Eisenhauer, Erickson, and Wilson – would survive. But the Defendants also argue that Valentine's § 1983 claims are barred by the two-year statute of limitations (Def. Supp. Br. at 14 (citing Garvin v. City of Philadelphia, 354 F.3d 215, 220 (3d Cir. 2003) (Section 1983 borrows Pennsylvania's two-year statute of limitations on personal injury actions))), and here Valentine runs into fatal trouble.

Valentine does not dispute Defendants's contention that the statute began to run (at the latest) on August 16, 2010, the date of Erickson's letter reaffirming Valentine's dismissal. (Def. Supp. Br. at 14). Nor does Valentine dispute that she first asserted her § 1983 claims in her Third Amended Complaint, filed January 28, 2013, months after the statute of limitations had run out. Valentine argues, rather, that her § 1983 claims relate back to her prior pleadings, which were timely.[3] (Pl. Opp'n Br. at 7-8).

---

[3]Valentine's Complaint was filed on January 26, 2011. (Def. Supp. Br. Ex. A, ECF No. 9-1). Her Amended Complaint was filed on March 24, 2011. (Def. Supp. Br. Ex. B, ECF No. 9-2). Her Second Amended Complaint was filed on July 12, 2012. (Def. Supp. Br. Ex. C, ECF No. 9-3).

Since Valentine's Third Amended Complaint was filed in the Court of Common Pleas, Pennsylvania's relation back rules apply, see 3 Moore's Federal Practice, § 15.20(5) (Matthew Bender 3d ed.) ("[W]hen an amendment to a pleading is made in state court prior to removal, state relation back law controls, and the federal court must apply those rules even after removal."), and under Pennsylvania law, "an amendment may not introduce a new cause of action after the statute of limitations has run its course." Kuisis v. Baldwin-Lima-Hamilton Corp., 457 Pa. 321, 319 A.2d 914, 918 (1974). Candidly, if not helpfully in light of the heavy reliance placed on the concept, the Supreme Court of Pennsylvania has "never adopted a comprehensive definition of what constitutes a cause of action, for the excellent reason that no such definition exists." Kuisis, 319 A.2d at 918 n.7. But Pennsylvania courts have employed various "tests for determining when an amended complaint presents a different cause of action." Frey v. Pennsylvania Elec. Co., 414 Pa. Super. 535, 607 A.2d 796, 798 (1992) (cited by Valentine, Pl. Opp'n Br. at 8). These "tests" involve comparing a plaintiff's previous timely claim with her new untimely claim to determine "whether a judgment would foreclose any action on either; whether the same measure of damages supports both; whether the same defenses are available in each; and whether the same measure of proof is required. Frey, 607 A.2d at 798. 'No' answers to these test

20

questions indicate the untimely claims constitute a different cause of action and are barred.

Instructively, the Commonwealth Court of Pennsylvania has applied the standard to late-coming § 1983 claims like Valentine's. In <u>Davis v. City of Philadelphia</u>, Davis originally filed a negligence suit alleging wrongful death against the City and sought to add a § 1983 claim after the statute of limitations under § 1983 had run. 168 Pa. Commw. Ct. 334, 650 A.2d 1127, 1128 (1994). Both claims were based on the same event: the decedent, a diabetic, had allegedly been falsely arrested and taken to the local police station, where she died of insulin shock for lack of medical care. <u>Davis</u>, 650 A.2d at 1128. The <u>Davis</u> court nevertheless held that the § 1983 claim constituted a new cause of action, reasoning, <u>inter alia</u>, that "[a] different governmental entity created the Section 1983 claim than the one which allowed common law remedies, and for different reasons – one to enforce the Fourteenth Amendment and one to compensate individuals for harm done by the negligence of others"; that "a different measure of proof is required" under § 1983 and common law negligence;[4] and that different

_____

[4]Drawing a contrast with the plaintiff's existing negligence action, which would require the plaintiff to prove merely that the defendant breached the duty of ordinary care, the court noted that, to prove his § 1983 claim, the plaintiff would have to establish that the decedent was deprived of a federal right by a defendant acting under color of state law and pursuant to municipal policy or custom, as well as deliberate indifference to the decedent's medical needs.

defenses are available under § 1983 (e.g., governmental immunity under Pennsylvania law unavailable) and common law negligence (governmental immunity under Pennsylvania law available).

In Burger v. Borough of Ingram, Burger originally asserted claims of wrongful arrest against two Pennsylvania boroughs, and she sought to add a § 1983 claim after the statute of limitations under § 1983 had run. 697 A.2d 1037, 1039-40 (1997). As in Davis, all of the claims were based on the same event: Burger's arrest and detention by two police officers. Burger, 697 A.2d at 1039. And like the Davis court, the Burger court held that the § 1983 claim constituted a new cause of action, reasoning that, in comparison with a wrongful arrest claim, a § 1983 claim "propose[s] a different legal theory and require[s] additional facts." Burger, 697 A.2d at 1042. The court noted that the "touchstone of a section 1983 action against a governmental body is an allegation that an official policy, custom or usage is responsible for a deprivation of rights protected by the Constitution," but Burger, in her original complaint alleging wrongful arrest, "never averred . . . that an official policy, custom or usage of the [boroughs] deprived her of rights protected by the Constitution." Id.

In the case at bar,  over the course of three previous complaints Valentine's grievance has been twofold. First, the University ignored procedures it was bound

to follow by Pennsylvania law and its own commitments (set forth in the University's Student Handbook); and second, various individuals (Eisenhauer, Grenoble, Erickson) intentionally inflicted emotional distress upon Valentine. To determine whether Valentine's § 1983 claims raise a new cause of action, the Court will focus on the comparison between her § 1983 claims and her previous evolving claims based on the University's failure to adhere to required procedures. (A § 1983 claim asserting the violation of a plaintiff's procedural due process rights is not even arguably the same cause of action as a claim alleging intentional infliction of emotional distress.)

Review of Valentine's original Complaint shows that she alleged that the University breached its contract (i.e., the Student Handbook) with her when it failed to adhere to the procedures set forth in the Student Handbook for addressing charges of misconduct. (Compl., Def. Supp. Br. Ex. A, ECF No. 9-1 ¶¶ 62-74). In the same Complaint, she alleged that the University had committed a "violation of due process," again basing this assertion on the University's failure adhere to the "procedures contained in the Student Handbook," as well as procedures contained in 22 Pa. Code § 505.3 and  24 P.S. § 20-2006-A. (Compl. ¶¶ 75-80).

In her first Amended Complaint, Valentine alleged that the University had committed a "violation of due process" when it failed to follow the same

procedures enumerated in the original Complaint, but this time Valentine added that the University's failure violated her rights "under the United States Constitution and the Pennsylvania Constitution and her Pennsylvania statutory rights to specified procedures."  (Am. Compl., Def. Supp. Br. Ex. B, ECF No. 9-2 ¶¶ 64-78). Valentine also restated her breach of contract allegations.

In her Second Amended Complaint, Valentine petitioned for a writ of mandamus directing the University to comply with the procedures enumerated in the two previous complaints, and sought declaratory judgment to the effect that the University had not complied, but must comply in the future, with those same procedures. (Second Am. Compl., Def. Supp. Br. Ex. C, ECF No. 9-3 ¶¶ 96-143). She omitted her previous allegations claiming a violation of the United States Constitution.

Comparing the allegations of Valentines' previous complaints to her Third Amended Complaint's claims under § 1983, the Court concludes that the § 1983 claims state a new cause of action barred by the statute of limitations.

The comparison is an awkward one. Valentine's first Amended Complaint comes closest to previewing her Third Amended Complaint's § 1983 claims; she at least mentions her rights under the United States Constitution. Even so, her first Amended Complaint's allegations fault the University, not the individual

Defendants, and she says nothing about § 1983. Of course, it made sense to say nothing of § 1983, since the University (i.e., the state) is not subject to suit under § 1983, and proceeding under that provision would have been unfruitful.

Unfortunately, the alternative approach Valentine took in her first Amended Complaint – rooting her entitlement to retrospective damages from the University in the United States Constitution in the style of a Bivens claim – is also unfruitful, and not only because of sovereign immunity: "The federal courts have consistently adhered to the principle that § 1983 preempts Bivens-type remedies against those who acted under color of state law." Martin A. Schwartz, Section 1983 Litigation Claims and Defenses § 1.05(E)(1) (4th ed. 2009). All of this is to say that the Constitutional claim against the University in Valentine's first Amended Complaint is something of a legal unicorn, imaginable but nonexistent, which makes comparing that claim to her Third Amended Complaint's § 1983 claims against the individual Defendants a challenge.

Nevertheless, the Court readily concludes that Valentine proposes different causes of action in her first Amended Complaint's due process claim against the University and her Third Amended Complaint's § 1983 claims against Eisenhauer, Erickson, and Wilson in their official capacities.  In § 1983 suits against state officers in their official capacities, "the real party in interest . . . is the

governmental entity and not the named official, [and] the entity's policy or custom must have played a part in the violation of federal law." Hafer v. Melo, 502 U.S. 21, 25 (1991). Moreover, to avoid dismissal under Will v. Michigan Dept. Of State Police, the official capacity suit must be for injunctive relief. But Valentine's due process claim in her first Amended Complaint seeks retrospective damages, and does not allege that the University has a policy or custom of violating the federal Constitution. In the language of the "tests" set forth in Frey, Valentine's § 1983 official capacity claim is supported by a different "measure of damages" (injunctive relief v. retrospective damages) and involves different defenses (the state can assert sovereign immunity whereas the officials sued for injunctive relief cannot) and a different "measure of proof" (Valentine makes no allegation respecting the policy or custom in her first Amended Complaint, a required element of an official capacity suit under § 1983). Failure of these tests indicates that Valentine's § 1983 claims raise a new cause of action.

The Court just as readily concludes that Valentine proposes a different cause of action with her Third Amended Complaint's § 1983 claims against Eisenhauer, Erickson, and Wilson in their personal capacities. First, obviously, the individual Defendants are not the University (against whom Valentine asserted her timely claim), and Valentine's first Amended Complaint does not allege that the

individual Defendants were acting under color of state law, a necessary element of a § 1983 personal capacity claim. Hafer, 502 U.S. at 25. Second, whereas the defense of sovereign immunity is available to the state, it is not available to state officials in their personal capacities. And third, defendants sued in their personal capacities may assert the "personal immunity defenses such as objectively reasonable reliance on existing law," whereas the state cannot.  Id. Like her official capacity claims, Valentine's personal capacity claims under § 1983 involve proof and defenses different from those implicated in her first Amended Complaint.

On the dimensions the courts found relevant in Davis and Burger, the claims in Valentine's timely complaints cannot be squared with her Third Amended Complaint's § 1983 claims. Accordingly, the Court holds that Valentine's § 1983 claims state a new cause of action barred by the statute of limitations.

**(c)    State Law Claims**

The Court will relinquish jurisdiction over Valentine's state law claims in accordance with 28 U.S.C. § 1367(c)(3). See Hedges v. Musco, 204 F.3d 109, 123 (3d Cir.2000) (emphasis in original) (quoting Borough of West Mifflin v. Lancaster, 45 F.3d 780, 788 (3d Cir.1995)) ("[W]here the claim over which the district court has original jurisdiction is dismissed before trial, the district court must decline to decide the pendent state claims unless considerations of judicial

27

economy, convenience, and fairness to the parties provide an affirmative justification for doing so.").

## V.    Conclusion

For the foregoing reasons, the motion to dismiss of Defendants Lock Haven University, Deborah Erickson, Donna Wilson, and Walter Eisenhauer is granted as to plaintiff's claims arising under federal law. The Court will relinquish jurisdiction over plaintiff's claims arising under state law.


BY THE COURT:


s/Matthew W. Brann
Matthew W. Brann
United States District Judge